

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

11 MAY 31 PM 1:32

CLERK ...........
MIDDLE DISTRICT OF COURT
TAMPA. FLORIDA

UNITED STATES OF AMERICA

v.                                    CASE NO.          8:09-Cr-585-T-24TBM
                                                        18 U.S.C. § 371
JOHN S. MORGAN,                                         18 U.S.C. § 1343
MARIAN I. MORGAN,                                       18 U.S.C. § 2314
STEPHEN E. BOWMAN, and                                  18 U.S.C. § 1957
ELI HECKSCHER                                           26 U.S.C. § 7206(1)
                                    Forfeiture          18 U.S.C. § 981(a)(1)(C)
                                    Forfeiture          28 U.S.C. § 2461

## SUPERSEDING INDICTMENT

The Grand Jury charges:

### COUNT ONE

### A. Introduction

At times material to this Superseding Indictment:

1.     John S. Morgan and Marian I. Morgan, husband and wife and residents of

Sarasota, Florida, were the principals of, and doing business as, Morgan European

Holdings APS ("MEH"), a Danish entity with offices in Sarasota, Florida and Stenlose,

Denmark.  John S. Morgan used the title of "Fund Manager" of MEH.  Marian I. Morgan

used the title of "Managing Director" of MEH.  MEH was purportedly in the business of

offering and selling certain investment opportunities and programs, commonly called

"prime bank instrument trading programs."   In fact, the Morgans used MEH to

perpetrate an investment fraud scheme, as described herein.

2.     Stephen E. Bowman was a resident of Omaha, Nebraska, and the

principal of Bowman Marketing Group, Inc. ("BMG").  BMG was purportedly in the

business of assisting companies with marketing and raising capital, as well as offering

and selling investment opportunities and programs, including "prime bank instrument

trading programs." BMG maintained bank accounts Nos. xx1337 and xx1956 at Bank

of the West in Omaha, Nebraska, and bank account No. xx0437 at American National

Bank in Omaha, Nebraska. Bowman participated in the investment fraud scheme

perpetrated through MEH.

3.      MTD Group, LLC ("MTD") was purportedly in the business of offering and

selling investment opportunities and programs, including "prime bank instrument trading

programs." Stephen E. Bowman was the "fund administrator" for MTD. MTD

maintained bank account No. xx0963 at JP Morgan Chase Bank, NA, in Rockwall,

Texas. Bowman also used MTD investor funds in the investment fraud scheme

perpetrated through MEH.

4.      Eli Heckscher was a Danish attorney with law offices in Stenlose,

Denmark. Heckscher maintained bank account No. xx4258 and escrow account No.

xx4550 at the Danske Bank in Copenhagen, Denmark. Heckscher used his position as

an attorney to further the investment fraud scheme perpetrated through MEH.

5.      John S. Morgan and Marian I. Morgan maintained the following bank

accounts in Sarasota, Florida:  (a) No. xx2644 in the name of ProTap Professionals

LLC ("ProTap") at Bank of America; (b) No. xx8280 in the names of John S. Morgan

and Marian I. Morgan at SunTrust Bank; and (c) Nos. xx6777 and xx7678 in the names

of John S. Morgan and Marian I. Morgan at Fifth/Third Bank.

6.      "Prime bank instrument trading programs" such as those offered by MEH,

BMG and MTD are non-existent and fictitious. The Securities and Exchange

Commission, the Federal Reserve System, the International Monetary Fund and

2

several other federal and international authorities have all publicly denounced these so-called "prime bank instrument trading programs" as frauds in proclamations, notices and advisories easily obtainable by the public.

## B. The Conspiratorial Agreement

7.      From in or about March 2005, and continuing thereafter up to and including at least August 2009, at Sarasota, in the Middle District of Florida, and elsewhere,

JOHN S. MORGAN,
MARIAN I. MORGAN,
STEPHEN E. BOWMAN,
and
ELI HECKSCHER,

defendants herein, knowingly and willfully did combine, conspire, confederate and agree together and with various other persons and organizations, both known and unknown to the Grand Jury, to commit the following offenses against the United States:

>       (a)     to knowingly execute by means of a wire or radio communication in interstate or foreign commerce a scheme and artifice to defraud, and to obtain money or property through materially false and fraudulent pretenses, representations and promises, in violation of Title 18, United States Code, Section 1343;

>       (b)     to knowingly and unlawfully transport, transmit and transfer in interstate or foreign commerce, securities and money having a value of $5,000 or more, knowing the same to have been stolen, converted and taken by fraud, in violation of Title 18, United States Code, Section 2314; and

>       (c)     to knowingly engage in monetary transactions in and affecting interstate and foreign commerce in criminally derived property from specified unlawful activity having a value of more than $10,000, in violation of Title 18, United States Code, Section 1957.

3

## C. The Manner and Means of the Conspiracy

8.     It was part of the conspiracy that conspirators and others would and did solicit individuals (hereinafter "investors") in the United States and elsewhere to invest in a high-yield "trade project" involving a European bank buy/sell of bank notes in the top fifty financial institutions, that is, a "prime bank instrument trading program" (hereinafter "trade project").

9.     It was further a part of the conspiracy that conspirators and others would and did knowingly make and cause to be made the following false and fraudulent pretenses, representations and promises, among others, orally and in writing, to investors so solicited to induce those investors to agree to invest in the "trade project" offered, which are described in substance below:

(a)     The defendants and others had exclusive connections that would enable them to place invested funds in "trade projects" conducted by "trade banks;"

(b)     The investor's principal would be pooled with the principal provided by other investors to reach a minimum placement amount for trades;

(c)     A "foundation" was involved in the "trade project;"

(d)     A "humanitarian project" had to be associated with the "trade project" and a portion of the gross profits had to go to the "humanitarian project;"

(e)     The projected profit or return on investment ("ROI") on the "trade project" ranged between 30% and 70% per month, or between 200% and 300% per 90 to 120-day period;

(f)     Withdrawals up to the full ROI could be made monthly by the investor;

(g)     Full or partial ROI could be accumulated for subsequent programs;

4

(h)     The investor's principal would be placed in one of three "funds":  (i) Frankfurt Fund; (ii) Luxembourg Fund; or (iii) Brussels Fund;

(i)     The investor's principal was tied up for a period of time ranging from 90 days up to one year from the start date of the "trade project;"

(j)     The "trade bank" or the fund manager, or both, would provide a guarantee of the investor's principal; and

(k)     The investor's principal would never be put at risk and would be held in escrow for the duration of the transaction.

10.     It was further a part of the conspiracy that conspirators and others would and did require investors who agreed to participate in the "trade project" to execute documents purporting to be binding confidentiality or non-disclosure agreements.

11.     It was further part of the conspiracy that conspirators and others would and did instruct the investors to send their payments of principal to an escrow account maintained by Eli Heckscher at the Danske Bank in Denmark, either directly or through another bank account owned or controlled by conspirators and others.

12.     It was further a part of the conspiracy that upon receipt of the investor funds in the Heckscher escrow account, conspirators and others would and did disburse, and dispose of, those funds in one or more of the following ways:

(a)     the defendants and others would and did pay fees, commissions, expenses and costs associated with the fraud;

(b)     the defendants and others would and did provide refunds and returns of principal to selected investors; and

(c)     the defendants and others would and did steal, convert and take by fraud investor funds.

5

13.     It was further a part of the conspiracy that the defendants would and did transport, transmit and transfer, and cause to be transported, transmitted and transferred, substantial amounts of investor funds from the Heckscher escrow account to bank accounts in Sarasota, Florida, owned or controlled by defendants and others, knowing that the investor funds had been stolen, converted and taken by fraud.

14.     It was further a part of the conspiracy that conspirators and others would and did engage in monetary transactions using investor funds which had been stolen, converted and taken by fraud, which monetary transactions were for their own personal use and benefit and not for the purposes for which the investor funds were intended.

15.     It was further a part of the conspiracy that defendants and others would and did make and cause to be made the following false and fraudulent pretenses, representations and promises, among others, orally and in writing, to investors who had requested a return of their principal and/or payment of their return on investment (profits), which false and fraudulent pretenses, representations and promises were designed to lull the investors into a false sense of security and to induce them to postpone their ultimate complaints to the authorities, which are described in substance below:

(a)     The release of funds was imminent;

(b)     Funds had not been released because of bank holidays, vacations, illnesses, or other pressing business; and

(c)     If a disgruntled investor contacted the "SEC" or the "FBI", those agencies would initiate an investigation and freeze all the funds and investors would get nothing back;

6

(d)     The delay in sending out wire-transfers was due to the fact that the "trade bank" had to report to the "UN" the amount of return that the "foundation" was paid;

(e)     The "trade bank" and the "foundation" had required MEH to keep both principal and ROI in place while they continued to trade MEH's account;

(f)     Despite delays, there never was any jeopardy to the principal funds that had never been put at risk;

(g)     If MEH had pressed the "trade bank" and "foundation" for release of the funds, those entities would have refused to disburse any ROI;

(h)     Danske Bank required additional supporting documentation before issuing any wire-transfers from the Eli Heckscher escrow account;

(i)     Danske Bank did not issue any wire-transfers because it was in financial trouble and had not received its bailout package;

(j)     Investors were assured that MEH was not involved with any scam, and had not invested in the Madoff Hedge Fund;

(k)     John S. Morgan and Marian I. Morgan received a letter from the "chief honcho" at the "trade bank" stating that the funds would be released on a date certain in the near future;

(l)     Because of the intricacies of the banking system in Europe and all the new rules and laws implemented since the start of 2009, the funds had not yet been deposited into the escrow account; and

(m)     To pressure the trade bank to release the funds, MEH had hired a "big gun," someone who was with the "Feds" for 27 years.

16.     It was further a part of the conspiracy that the defendants and others would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purposes of, and the acts done in furtherance of said conspiracy.

7

### D. Overt Acts

17.     In furtherance of the conspiracy and to accomplish the objects of the conspiracy, the defendants and other conspirators known and unknown to the Grand Jury committed, and caused to be committed, the following Overt Acts, within the Middle District of Florida, and elsewhere, which are described in substance below:

(1)     On or about November 2, 2005, at Apopka, Florida, John S. Morgan caused investor R. Larey Beasley to send a wire-transfer of approximately $200,000 from account No. xx4762 at the United Heritage Bank in the name of R. Larey Beasley to account No. xx2644 at the Bank of America in the name of ProTap.

(2)     On or about December 11, 2005, John S. Morgan and Marian I. Morgan sent an e-mail message to investor R. Larey Beasly in Apopka, Florida, and other MEH participants containing what purportedly were MEH "testimonials."

(3)     In or about December 2005, John S. Morgan had a telephone conversation with Christopher Weides in which John S. Morgan explained how the "trade project" supposedly worked.

(4)     On or about February 27, 2006, Stephen E. Bowman sent a wire transfer of approximately  $300,000 from BMG account No. xx0437 at American National Bank to Heckscher escrow account no. xx4550 at Danske Bank.

(5)     On or about March 14, 2006, at Apopka, Florida, John S. Morgan caused investor Eugene Braddock to send a wire-transfer of approximately $100,000 from account No. xx5607 at the Wachovia Bank in the name of Eugene Braddock to Heckscher escrow account No. xx4550 at Danske Bank.

(6)     On or about April 17, 2006, Marian I. Morgan sent an e-mail message from Brussels, Belgium to investor R. Larey Beasley in Apopka, Florida, which contained various attachments, including a letter purportedly written and signed by attorney Eli Heckscher.

(7)     On or about April 26, 2006, Marian I. Morgan sent an e-mail message to investor R. Larey Beasley in Apopka, Florida, explaining and clarifying how the "Brussels Fund" purportedly worked.

(8)     On or about April 27, 2006, at Tarzana, California, conspirators caused investor Jackie Kreitzman to execute an Agreement to "loan" Bowman Marketing Group $200,000 for a period of 90 days, with a slated projected ROI of 40% per month.

(9)     On or about April 27, 2006, at Eaton, Colorado, conspirators caused investor John R. Long to execute an agreement to "loan" Bowman Marketing Group $222,000 for a period of 90 days, with a slated projected ROI of 30% per month.

(10)    On or about May 1, 2006, conspirators caused Thomas D. Woodcock, Jr., to send a wire-transfer of approximately $5,863,984 from account No. xx0963 at JP Morgan Chase Bank in the name of MTD Group to account No. xx1337 at the Bank of the West in the name of Bowman Marketing Group.

(11)    On or about May 1, 2006 John S. Morgan and Stephen E. Bowman entered into an agreement for Bowman Marketing Group to "loan" $3,000,000 to Morgan European Holdings APS/Brussels Fund for the purpose of participating in a trade project.

9

(12)    On or about May 1, 2006, Stephen E. Bowman sent a wire-transfer of approximately $3,000,000 from account No. xx1337 at the Bank of the West in the name of Bowman Marketing Group to Heckscher escrow account No. xx4550 at the Danske Bank.

(13)    On or about September 27, 2006, Marian I. Morgan sent an e-mail message to Christopher C. Weides and others assuring him that (a) no investor had lost any money, (b) the investors would be receiving their money soon, and (c) John S. Morgan had just been in an all-day meeting with the "bank, the law firm and the traders."

(14)    On or about December 11, 2006, Marian I. Morgan sent an e-mail message to Christopher C. Weides and others informing them that (a) wire-transfers for ROI from the Luxembourg Fund were delayed because of human error; (b) wire-transfers for ROI from the Brussels Fund would come from the "trade bank;" and (c) that no one should be fearful or have doubt about receiving ROI or commission payments.

(15)    On or about February 9, 2007, Marian I. Morgan sent an e-mail message to Leonid Prymak, with a copy to Stephen E. Bowman, in which Marian I. Morgan stated that if a disgruntled investor contacted the SEC or the FBI, those agencies would initiate an investigation and freeze all the funds and investors would get nothing back.

(16)    On or about March 26, 2007, Marian I. Morgan sent an e-mail message to Christopher C. Weides and others notifying them that (a) a new bank account had been set up for payout of funds with John S. Morgan, Heckscher, and a

managing director of the foundation being the signatories; and (b) in order for Weides or any investor to receive any funds, additional specified documentation had to be sent to Marian I. Morgan in Sarasota, Florida.

(17)   On or about June 29, 2007, Marian I. Morgan sent an e-mail message to Christopher C. Weides and others, which message included a copy of a letter purporting to be from attorney Eli Heckscher to John S. Morgan and Marian I. Morgan discussing the status of outgoing wire-transfers.

(18)   On or about July 9, 2007, Marian I. Morgan sent an e-mail message to Leonid Prymak and Stephen E. Bowman.

(19)   On or about October 19, 2007, Marian I. Morgan sent an e-mail message to Leonid Prymak in which Marian I. Morgan stated that principal funds of investors being held in escrow were safe and always had been.

(20)   On or about October 22, 2007, Marian I. Morgan, on behalf of MEH, wrote a letter to Stephen E. Bowman, acknowledging Bowman's participation in the Luxembourg Fund with a "loan" of $1,000,000 to MEH, and Bowman's participation in the Brussels Fund with a "loan" of $4,500,000 to MEH, which letter Bowman provided to investor John R. Long.

(21)   On or about November 14, 2007, John S. Morgan had a telephone conversation with investor John R. Long in which John S. Morgan provided false assurances that John R. Long's principal would be returned to him.

(22)   On or about November 18, 2007, Marian I. Morgan sent an e-mail message to Leonid Prymak assuring him that the "Foundation" and "Trade Bank" were very real.

(23)　On or about December 18, 2007 Eli Heckscher wrote a letter to investors, the text of which was misleading in important regards, to address investors' concerns.

(24)　On or about June 26, 2008, Marian I. Morgan sent an e-mail to Eli Heckscher.

(25)　On or about December 30, 2008, Marian I. Morgan sent an e-mail message to Leonid Prymak in which Marian I. Morgan provided false excuses for the failure of MEH to return principal funds to investors, and false assurances that the principal funds were safe and would be returned.

(26)　On or about June 6, 2009, Marian I. Morgan sent an e-mail message to Leonid Prymak providing false assurances that investor principal would be returned.

(27)　On or about June 2, 2009, Eli Heckscher wrote a letter to victim-investor Richard Meyer in which Eli Heckscher falsely confirmed that Meyer's funds were still in Eli Heckscher's escrow account.

(28)　On or about June 21, 2009, Marian I. Morgan sent an email to Lita Daniels representing that a letter from attorney Eli Heckscher, confirming that the principal amount of Daniels' investment was being held in Heckscher's escrow account, would be available soon.

(29)　On or about June 21, 2009, a conspirator sent a letter to Lita Daniels, falsely confirming that her investment funds remained in attorney Heckscher's escrow account.

(30)    On or about June 22, 2009, Eli Heckscher wrote a letter to Judith and Donald Ausmus, in which Heckscher falsely confirmed that their investment funds were still on deposit in his escrow account.

(31)    On or about June 30, 2009, Marian I. Morgan sent an e-mail message to investor Eugene Braddock in Altamonte Springs, Florida, assuring him that he would soon receive his profits.

(32)    On or about August 10, 2009, Eli Heckscher sent an email to Richard Meyer, in which Heckscher conditioned return of Meyer's investment funds on Meyer's agreement to release "without limitation" the Morgans, Heckscher, and others.

(33)    The Grand Jury re-alleges and incorporates by reference the acts alleged in Counts Two through Nineteen of this Superseding Indictment as Overt Acts as though fully set forth herein.

All in violation of Title 18, United States Code. Section 371.

## COUNTS TWO THROUGH EIGHT

### A. Introduction

1.      The Grand Jury re-alleges and incorporates by reference Part A of Count One of this Superseding Indictment as though fully set forth herein.

### B. The Criminal Scheme

2.      From in or about March 2005, and continuing thereafter up to and including at least August 2009, at Sarasota, in the Middle District of Florida, and elsewhere,

JOHN S. MORGAN
MARIAN I. MORGAN,
and
ELI HECKSCHER,

13

defendants herein, knowingly and willfully devised and intended to devise a scheme
and artifice to defraud and to obtain money and property from investors in connection
with "prime bank instrument trading programs" by means of false and fraudulent
pretenses, representations and promises relating to material facts.

### C. The Manner and Means of the Scheme

3.      The Grand Jury re-alleges and incorporates by reference Part C of Count
One of this Superseding Indictment as though fully set forth herein.

### D. Acts of Execution

On or about the dates as set forth below in each Count, in the Middle District of
Florida, the defendants, as set forth below in each Count, for the purpose of executing
the aforesaid scheme and artifice to defraud, did knowingly transmit and cause to be
transmitted in interstate and foreign commerce by means of wire and radio
communications, certain writings, signs, signals, pictures and sounds, as described and
set forth below:

| Count | Date | Defendants | Nature of Communications | Sent From | Sent To |
|-------|------|-----------|--------------------------|-----------|---------|
| Two | 05/11/06 | John S. Morgan Marian I. Morgan | Wire-transfer of approximately $100,000 | Acct. No. xx3799 at Bank of America in Orlando, Florida in the name of The Groves Trust | Heckscher Escrow Acct. No. xx4550 at Danske Bank in Copenhagen, Denmark |
| Three | 06/08/06 | John S. Morgan Marian I. Morgan | Wire-transfer of approximately $200,000 | Heckscher Escrow Acct. No. xx4550 at Danske Bank in Copenhagen, Denmark | ProTap Acct. No. xx2644 at Bank of America in Sarasota, Florida |
| Four | 06/09/06 | John S. Morgan Marian I. Morgan | Wire-transfer of approximately $200,000 | Acct. No. xx4762 at United Heritage Bank in Apopka, Florida in the name of R. Larey Beasely | Heckscher Escrow Acct. No. xx4550 at Danske Bank in Copenhagen, Denmark |
| Five | 06/20/06 | John S. Morgan Marian I. Morgan | Wire-transfer of approximately $200,000 | Heckscher Escrow Acct. No. xx4550 at Danske Bank in Copenhagen, Denmark | ProTap Acct. No. xx2644 at Bank of America in Sarasota, Florida |

14

| Count | Date | Defendants | Nature of Communications | Sent From | Sent To |
|-------|------|------------|--------------------------|-----------|---------|
| Six | 04/03/08 | John S. Morgan Marian I. Morgan | Wire-transfer of approximately $50,000 | Heckscher Escrow Acct. No. xx4550 at Danske Bank in Copenhagen, Denmark | Acct. No. xx6777 at Fifth/Third Bank in Sarasota, Florida in the names of John S. Morgan and Marian I. Morgan |
| Seven | 09/15/08 | John S. Morgan Marian I. Morgan | Wire-transfer of approximately $100,000 | Heckscher Escrow Acct. No. xx4550 at Danske Bank in Copenhagen, Denmark | ProTap Acct. No. xx2644 at Bank of America in Sarasota, Florida |
| Eight | 06/18/09 | John S. Morgan Marian I. Morgan Eli Heckscher | Facsimile transmission of documents | Hominy, Oklahoma | Middle District of Florida (813) 354-4687 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS NINE THROUGH THIRTEEN

### A. Introduction

1.      The Grand Jury re-alleges and incorporates by reference Part A of Count

One of this Superseding Indictment as though fully set forth herein.

### B. The Manner and Means of the Violation

2.      The Grand Jury re-alleges and incorporates by reference Part C of Count

One of this Superseding Indictment as though fully set forth herein.

### C. The Violations

3.      On or about the dates as set forth below in each Count, in the Middle

District of Florida,

JOHN S. MORGAN,
MARIAN I. MORGAN,
and
STEPHEN E. BOWMAN,

defendants herein, did unlawfully transport, transmit and transfer, and cause to be

transported, transmitted and transferred, in interstate and foreign commerce, as set

forth below, securities and money having a value of $5,000 or more, as described

15

below, knowing the same to have been stolen, converted and taken by fraud:

| Count | Date | Defendants | Description of Securities or Money | Transported, Transmitted or Transferred From | Transported, Transmitted or Transferred To |
|-------|------|-----------|-----------------------------------|----------------------------------------------|---------------------------------------------|
| Nine | 07/03/06 | John S. Morgan Marian I. Morgan | Wire-transfer of approximately $600,000 | Heckscher Escrow Acct. No. xx4550 at Danske Bank in Copenhagen, Denmark | ProTap Acct. No. xx2644 at Bank of America in Sarasota, Florida |
| Ten | 12/06/06 | John S. Morgan Marian I. Morgan | Wire-transfer of approximately $200,000 | Heckscher Escrow Acct. No. xx4550 at Danske Bank in Copenhagen, Denmark | Acct. No. xx8280 at SunTrust Bank in Sarasota, Florida in the names of Marian and John Morgan |
| Eleven | 04/11/07 | John S. Morgan Marian I. Morgan | Wire-transfer of approximately $500,000 | Heckscher Escrow Acct. No. xx4550 at Danske Bank in Copenhagen, Denmark | ProTap Acct. No. xx2644 at Bank of America in Sarasota, Florida |
| Twelve | 10/09/07 | John S. Morgan Marian I. Morgan Stephen E. Bowman | Wire-transfer of approximately $65,000 | ProTap Acct. No. xx2644 at Bank of America in Sarasota, Florida | Acct. No. xx0437 at American National Bank in Omaha, Nebraska in the name of Bowman Marketing Group |
| Thirteen | 07/01/08 | John S. Morgan Marian I. Morgan | Wire-transfer of approximately $49,000 | Heckscher Escrow Acct. No. xx4550 at Danske Bank in Copenhagen, Denmark | Acct. No. xx6777 at Fifth/Third Bank in Sarasota, Florida in the names of John S. Morgan and Marian I. Morgan |

All in violation of Title 18, United States Code, Sections 2314 and 2.

## COUNTS FOURTEEN THROUGH NINETEEN

### A. Introduction

1.      The Grand Jury re-alleges and incorporates by reference Part A of Count

One of this Superseding Indictment as though fully set forth herein.

### B. The Violations

2.      On or about the dates set forth below in each Count, in the Middle District

of Florida, the defendants, as set forth below in each Count, did knowingly engage and

attempt to engage in a monetary transaction, in and affecting interstate and foreign

commerce, in criminally derived property of a value greater than $10,000.00, which

property was in fact derived from a specified unlawful activity, namely, wire fraud, in

violation of Title 18, United States Code, Section 1343, and interstate transportation of

stolen property, in violation of Title 18, United States Code, Section 2314, as charged below:

| Count | Defendants | Date | Financial Institution/Account Information | Transaction | Amount |
|---|---|---|---|---|---|
| Fourteen | John S. Morgan Marian I. Morgan | 03/27/06 | ProTap Acct. No. xx2644 at Bank of America in Sarasota, Florida | Check No. 1238 payable to William Parker Harrison Deitz & Getzen law firm | $100,000.00 |
| Fifteen | John S. Morgan Marian I. Morgan | 05/30/06 | Acct. No. xx7225 at Bank of America in Sarasota, Florida in the name of William Parker Harrison Dietz & Getzen Trust Account | Deposit of wire-transfer from Heckscher Escrow Acct. No. xx4550 at Danske Bank in Copenhagen, Denmark | $1,776,347.13 |
| Sixteen | John S. Morgan Marian I. Morgan | 06/01/06 | Acct. No. xx7225 at Bank of America in Sarasota, Florida in the name of William Parker Harrison Deitz & Getzen Trust account | Check No. 103585 payable to Ferguson, Skipper, Shaw, Keyser, and Baron re purchase of property | $1,830,845.58 |
| Seventeen | John S. Morgan Marian I. Morgan | 01/29/07 | ProTap Acct. No. xx2644 at Bank of America in Sarasota, Florida | Check No. 1299 payable to Jaguar of Sarasota | $24,000.00 |
| Eighteen | John S. Morgan Marian I. Morgan | 04/13/07 | ProTap Acct. No. xx2644 at Bank of America in Sarasota, Florida | Wire-transfer sent to the Social Security Bank, LTD., in Accra, Ghana | $365,000.00 |
| Nineteen | John S. Morgan Marian I. Morgan | 04/07/08 | Acct. No. xx6777 at Fifth/Third Bank in Sarasota, Florida in the name of John S. Morgan and Marian I. Morgan | Debit in favor of Fifth/Third Bank re mortgage payment | $34,157.43 |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## COUNT TWENTY

On or about April 19,. 2007, within the Middle District of Florida, and elsewhere,

JOHN S. MORGAN,
and
MARIAN I. MORGAN,

defendants herein, residents of Sarasota, Florida, did willfully make and subscribe a

Joint U.S. Form 1040 Individual income tax return for tax year 2005, which was verified

by a written declaration that it was made under the penalties of perjury and which each

of the defendants did not believe to be true and correct as to every material matter.

That U.S. Form 1040 Federal income tax return, which was prepared and signed in the

Middle District of Florida and was filed with the Internal Revenue Service, falsely

omitted approximately $1,393,581 of income.

All in violation of Title 26, United States Code, Section 7206(1) and Title 18,

United States Code, Section 2.

### COUNT TWENTY-ONE

On or about October 19, 2007, within the Middle District of Florida, and

elsewhere,

JOHN S. MORGAN,
and
MARIAN I. MORGAN,

defendants herein, residents of Sarasota, Florida, did willfully make and subscribe a

Joint U.S. Form 1040 Individual income tax return for tax year 2006, which was verified

by a written declaration that it was made under the penalties of perjury and which each

of the defendants did not believe to be true and correct as to every material matter.

That U.S. Form 1040 Federal income tax return, which was prepared and signed in the

Middle District of Florida and was filed with the Internal Revenue Service, falsely

omitted approximately $3,632,982 of income.

All in violation of Title 26, United States Code, Section 7206(1) and Title 18,

United States Code, Section 2.

## COUNT TWENTY-TWO

On or about October 19, 2008, within the Middle District of Florida, and
elsewhere,

JOHN S. MORGAN,
and
MARIAN I. MORGAN,

defendants herein, residents of Sarasota, Florida, did willfully make and subscribe a
Joint U.S. Form 1040 Individual income tax return for tax year 2007, which was verified
by a written declaration that it was made under the penalties of perjury and which each
of the defendants did not believe to be true and correct as to every material matter.
That U.S. Form 1040 Federal income tax return, which was prepared and signed in the
Middle District of Florida and was filed with the Internal Revenue Service, falsely
omitted approximately $1,948,610 of income.

All in violation of Title 26, United States Code, Section 7206(1) and Title 18,
United States Code, Section 2.

## FORFEITURES

1.      The allegations contained in Counts One through Nineteen of this
Superseding Indictment are hereby realleged and incorporated by reference for the
purpose of alleging forfeitures pursuant to the provisions of Title 18, United States
Code, Sections 981(a)(1)(C) and Title 28, Section 2461.

2.      From their engagement in any or all of the violations alleged in Count One
of this Superseding Indictment, involving a conspiracy to commit wire fraud offenses, to
transport, transmit and transfer fraudulently obtained securities and money, and to
commit money laundering offenses, in violation of Title 18, United States Code, Section

19

371, and their engagement in the substantive violations alleged in Counts Two through

Eight, alleging violations of Title 18 United States Code Section1343, Counts Nine

through Thirteen, alleging violations of Title 18, United States Code, Section 2314, and

Counts Fourteen through Nineteen, alleging violations of Title 18, United States Code,

Section1957, the defendants,

JOHN S. MORGAN,
MARIAN I. MORGAN,
STEPHEN E. BOWMAN,
and
ELI HECKSCHER,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section

981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all of the

defendants' right, title and interest in any property, real and personal, constituting and

derived from proceeds traceable to such offense(s).

3.      The assets to be forfeited include, but are not limited to a sum of money

equal to approximately $10,085,375.00, representing the amount of proceeds the

defendants obtained as a result of the conspiracy and the substantive offenses for

which the defendants are jointly and severally liable;

4.      If any of the forfeitable assets described above, as a result of any act or

omission of the defendants:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third party;

      c.      has been placed beyond the jurisdiction of the court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided
without difficulty,

20

it is the intent of the United States, pursuant to Title 21, United States Code, Section

853(p) [incorporated under the provisions of Title 28, United States Code, Section

2461(c)], to seek forfeiture of any other property of said defendants up to the value of

the forfeitable asset or property.

A TRUE BILL,

_Sandra K. Sutphin_
deputy Foreperson

ROBERT E. O'NEILL
United States Attorney

By: _____
CHERIE L. KRIGSMAN
Assistant United States Attorney

By: _____
ROBERT T. MONK
Assistant United States Attorney

By: _____
ROBERT A. MOSAKOWSKI
Assistant United States Attorney
Chief, Economic Crimes Section

FORM OBD-34
APR 1991

No. 8:09-cr-00585-24TBM

# UNITED STATES DISTRICT COURT

Middle District of Florida
Tampa Division

THE UNITED STATES OF AMERICA

vs.

JOHN S. MORGAN
MARIAN I. MORGAN
STEPHEN E. BOWMAN
and
ELI HECKSCHER

## SUPERSEDING INDICTMENT

Violations:
Title 18, United States Code, Section 371
Title 18, United States Code, Section 1343
Title 18, United States Code, Section 2314
Title 18, United States Code, Section 1957
Title 18, United States Code, Section 7206(1)
Title 18, United States Code, Section 981(a)(1)(C) - Forfeiture
Title 28, United States Code, Section 2461 - Forfeiture

A true bill,

_Sandra K. Sutphin_
Foreperson

Filed in open court this 1st day
of ~~June~~ may, 2011.

_____
Clerk

Bail $ _____

GPO 863 525

N:\_Criminal Cases\M\Morgan, John_2009R01675_clk\C_Indictment back_superseding.wpd