

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 8:09-Cr-585-T-24TBM

STEPHEN BOWMAN

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Robert E. O'Neill, United States Attorney for the Middle District of Florida, and the defendant, STEPHEN BOWMAN, and the attorney for the defendant, Michael Schleich, Esquire, mutually agree as follows:

A.     **Particularized Terms**

1.     Count(s) Pleading To

The defendant shall enter a plea of guilty to Counts One and ~~Eleven~~ Twelve *clk* of the Superseding Indictment.  Count One charges the defendant with conspiracy, in violation of 18 U.S.C. § 371.  Count Twelve charges the defendant with unlawful transfer in interstate or foreign commerce of funds taken by fraud, in violation of 18 U.S.C. § 2314.

Defendant's Initials _____          AF Approval _____

2.   <u>Maximum Penalties</u>

Count One carries a maximum sentence of five (5) years imprisonment, a fine of $250,000 or twice the gross gain caused by the offense, or twice the gross loss caused by the offense, whichever is greater, and a term of supervised release of three (3) years.  Count Twelve carries a maximum sentence of ten (10) years imprisonment, a fine of $250,000 or twice the gross gain caused by the offense, or twice the gross loss caused by the offense, whichever is greater, and a term of supervised release of three (3) years.  Each Count also carries a special assessment of $100, said special assessment to be due on the date of sentencing.  With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3.   <u>Elements of the Offense(s)</u>

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One are:

<u>First</u>:     that two or more persons, in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the superseding indictment;

<u>Second</u>:   that the defendant, knowing the unlawful purpose of the plan, willfully joined in it;

<u>Third</u>:    that one of the conspirators during the existence of the conspiracy knowingly committed at least one of the methods (or "overt acts") described in the superseding indictment; and

Defendant's Initials _____

2

Fourth:   that such "overt act" was knowingly committed at or about the time alleged in an effort to carry out or accomplish some object of the conspiracy.

The elements of Count Twelve are:

First:   that the defendant transferred or caused to be transmitted, in interstate commerce, property taken by fraud as described in the superseding indictment;

Second:   that such items had a value of $5,000 or more; and

Third:   that the defendant transmitted items willfully and with knowledge that the property had been taken by fraud.

4.   No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement. The parties understand that the U.S. Attorney's Office for the Eastern District of Texas anticipates seeking charges against the defendant related to similar conduct in that district. The U.S. Attorney's Office in the Middle District of Florida has made no promises to the defendant related to any prosecution for such conduct in the Eastern District of Texas other than to agree to accept a transfer of any such prosecution to the Middle District of Florida, pursuant to Fed. R. Crim. P. 20, in the event that the defendant seeks such a transfer.

Defendant's Initials _____

3

5. <u>Mandatory Restitution to Victim of Offense of Conviction</u>

Pursuant to 18 U.S.C. §§ 3663A(a) and (b), defendant agrees to make full restitution. Names of victims and amounts of restitution will be determined at a later date prior to sentencing.

6. <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b), the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

Defendant's Initials _*SEB*_

7.   Role in Offense

The United States recommends to the Court that the defendant receive a three-level upward adjustment, pursuant to USSG §3B1.1, regarding the defendant's role in the offense.  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

8.   Low End

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court.  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

9.   Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require.  If the cooperation is completed prior to

Defendant's Initials _____

5

sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG § 5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both.  If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b).  In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

10.   Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

Defendant's Initials _SЄB_

11.   Cooperation - Responsibilities of Parties

     a.   The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime.  However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

     b.   It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

     (1)   The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

     (2)   The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware

Defendant's Initials _____

7

of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth

Defendant's Initials 

8

in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

12.   Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, a forfeiture money judgment in an amount to be determined at or before sentencing, representing the amount of proceeds the defendant obtained as a result of the fraud to which he is pleading guilty. The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant also hereby agrees that the forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have that the forfeiture constitutes an excessive fine.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to the provisions of Rule 32.2(b)(1), the United States and the defendant request that at the time of accepting this plea agreement, the court make a determination that the government has established the

Defendant's Initials 

9

requisite nexus between the property subject to forfeiture and the offense(s) to which defendant is pleading guilty and enter a preliminary order of forfeiture. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture shall be final as to the defendant at the time it is entered, notwithstanding the requirement that it be made a part of the sentence and be included in the judgment.

The defendant agrees to forfeit all interests in the properties described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Defendant further agrees to take all steps necessary to locate property and to pass title to the United States before the defendant's sentencing. To that end, defendant agrees to fully assist the government in the recovery and return to the United States of any assets, or portions thereof, as described above wherever located. The defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control and those which are held or controlled by a nominee. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.

The defendant agrees that the United States is not limited to forfeiture of the property described above. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed

Defendant's Initials _____

beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. This Court shall retain jurisdiction to settle any disputes arising from application of this clause. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

**B.** **Standard Terms and Conditions**

1. Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1) (limited to offenses committed on or after April 24, 1996); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663 (limited to offenses committed on or after November 1, 1987), including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. On each count to which a plea of guilty is entered, the Court shall impose a special assessment, to be payable to the Clerk's Office, United States District Court,

Defendant's Initials _____

and due on date of sentencing.  The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit, upon execution of this plea agreement, an affidavit reflecting the defendant's financial condition.  The defendant further agrees, and by the execution of this plea agreement, authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and

Defendant's Initials _____

any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.

4.      Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

5.      Defendant's Waiver of Right to Appeal and
        Right to Collaterally Challenge the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to

Defendant's Initials  _SES_

13

appeal defendant's sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

6.    <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

7.    <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

8.    <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any

Defendant's Initials ___SSB___

discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

Defendant's Initials _SEB_

9.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty.  The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt:

FACTS

Stephen E. Bowman was a resident of Omaha, Nebraska, and the principal of Bowman Marketing Group, Inc. ("BMG").  BMG was purportedly in the business of assisting companies with marketing and raising capital, as well as offering and selling investment opportunities and programs, and, beginning in 2006 this business included "prime bank instrument trading programs."  Bowman, through BMG, maintained bank accounts Nos. xx1337 and xx1956 at Bank of the West in Omaha, Nebraska, and bank account No. xx0437 at American National/People's Bank in Omaha, Nebraska.

Co-defendants John S. Morgan and Marian I. Morgan, husband and wife and residents of Sarasota, Florida, were the principals of a Danish entity called Morgan European Holdings APS ("MEH").  John Morgan was called the "Fund Manager" and Marian Morgan had the title of "Managing Director" of MEH.  MEH was purportedly in the business of investments that were commonly called "prime bank instrument trading programs."  In fact, defendants John and Marian Morgan and others perpetrated a massive investment fraud scheme upon MEH victim-investors.  Defendants John and Marian Morgan maintained several bank accounts, including account xx8280 at Sun

Defendant's Initials _____

16

Trust Bank and account xx2644 at Bank of America in Sarasota, Florida, in the name of Pro-Tap Professionals, LLC

Eli Heckscher ("Heckscher") was an attorney in Stenlose, Denmark who maintained bank account no. xx4258 and xx4550 at the Danske Bank in Denmark.

In or about late 2005 or early 2006, defendant Bowman contacted defendants John and Marian Morgan in connection with the Morgans' purported bank trading program, and he discussed that so-called investment opportunity with them. During that discussion and in ensuing discussions, the Morgans made promises to Bowman about the investment program.  For example, they promised that investors would realize high rates of return on their investments and claimed the investment was risk-free.  In addition, Bowman had an agreement with another individual involved in the MEH trading program to share commissions promised to that individual by the Morgans for funneling investment funds to the Morgans.  Defendant Bowman acknowledges that prior to meeting defendants John and Marian Morgan, he had conducted extensive research about various purported bank trading programs and that he had concluded that virtually all – "99 percent" –of such investments in bank trading programs were fraudulent.  Defendant Bowman also concedes that prior to meeting defendants John and Marian Morgan he had reviewed publically available and easily acquired information provided by U.S. Government agencies, over the internet, warning members of the public of the fraudulent nature of the investments bearing the characteristics of that described to Bowman by the Morgans.

Defendant's Initials _SEB_

17

Bowman also conducted research regarding the Morgans specifically and uncovered negative information indicating that an investor had filed a complaint about them, claiming that they had absconded with investors' funds in the past. Nevertheless, despite being aware of this negative information; despite being aware of the overwhelmingly fraudulent nature of such purported bank trading programs; despite the unbelievably high rates of return being offered by the defendants John and Marian Morgan; and despite the Morgans' incredible guarantee that investors' principal investments were risk-free, Bowman recommended the MEH trading programs to his clients as investments and invested BMG funds in those programs.

Bowman collected a total of approximately 13 million dollars from investors for the MEH trading programs, but he sent only a portion, approximately $4.5 million, of that to MEH. Instead, he used a portion of those funds intended for MEH investment for his own personal use. Beginning in February 2006 Bowman caused wire transfers of approximately $4.5 million in BMG investor funds to be sent to Heckscher for deposit in the MEH Danske Bank xx4450 account. This total included a transfer on or about May 1, 2006, of approximately $3 million from BMG account xx1337 at the Bank of the West to the Danske Bank xx4450 account.

During the summer of 2006, defendant Marian Morgan represented that BMG had over $29 million on deposit in principal and funds earmarked as returns on investment, as a result of the purportedly very successful trading program. Marian Morgan, however, was unwilling to provide Bowman with basic information to back up her representations, including bank statements verifying the claims of BMG funds on

Defendant's Initials _SEB_

18

deposit. Bowman came to understand that the trading programs marketed by the Morgans were a scam, consistent with his prior research. Nevertheless, Bowman continued to solicit investor funds for the MEH trading programs, promising his victim-clients an incredible 70% return on their investments. He also advised his clients to continue rolling over their funds in the MEH programs to further increase their returns on the investment.

Indeed, Bowman made materially false statements to investors when, in October 2006, he vouched for the viability of the investment by stating that he had been dealing with the fund manager (John Morgan) for many years. In reality, it had only been a few months. Bowman also used some later investors' funds to repay earlier investors, and he falsely represented to the later investors that they were buying out the previous investors' positions. Bowman knowingly misrepresented the legitimacy of the MEH trading programs for several reasons, including, but not limited to the fact that he needed the MEH scheme to succeed in order to be able to pay back the investors from whose funds he had siphoned off monies for his own personal use.

By the summer of 2007, certain BMG investor clients who had invested in MEH trading programs were understandably concerned about the safety of their investments because the conspirators' promises regarding investment returns had been broken. On or about August 28, 2007 Bowman met with defendants John and Marian Morgan in the Tampa, Florida, area to discuss a strategy for mollifying concerned investors. Despite the fact that Bowman knew the MEH programs were scams, he parroted to investors the litany of excuses the Morgans had given for their inability to

Defendant's Initials _____ *SEB*

19

fulfill promises and repay investor principle or distribute promised returns on investment. Those excuses included the claim that confidentiality agreements prevented them from disclosing certain information regarding trade banks and the so-called charitable foundation that was the cornerstone of their trading program. Of course, Bowman realized that the investors who screamed the loudest sometimes got their money back. For example, on or about October 9, 2007, defendants John and Marian Morgan caused a wire transfer of approximately $65,000 to be made from their Pro-Tap account xx2264 at Bank of America in Sarasota, Florida to BMG account xx0437 at American National Bank in Omaha, Nebraska, in response to investor B.M.'s demands for repayment.

Bowman continued, until sometime in 2009, to lull his clients into believing that their funds invested in MEH were safe and that the Morgans had legitimate reasons for not being able to provide repayment of the investors' principle nor making payment of the handsome returns promised with the MEH trading programs.

10.   Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials   _SSCS_

11.   Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this __27__ day of __May__, 2011.

ROBERT E. O'NEILL
United States Attorney

_____          By: _____
STEPHEN BOWMAN                      CHERIE L. KRIGSMAN
Defendant                           Assistant United States Attorney

_____          _____
MICHAEL SCHLEICH, ESQUIRE          ROBERT A. MOSAKOWSKI
Attorney for Defendant             Assistant United States Attorney
                                   Chief, Economic Crimes Section